Submitted September 10, affirmed October 14, 2015

**BRENT WINTON LAMBERT,**
*Petitioner-Appellant,*

*v.*

**Jeff PREMO,**
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
12C21429; A155569

360 P3d 720

Jason Weber and O'Connor Weber LLP filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Kathleen Cegla, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Hadlock, Judge, and Egan, Judge.

HADLOCK, J.

**HADLOCK, J.**

Petitioner was convicted of two counts of second-degree robbery after entering a guilty plea. He did not pursue direct appeal. Petitioner later petitioned for post-conviction relief without success. On appeal from the post-conviction judgment, petitioner contends that the court erred by failing to grant him post-conviction relief in the form of a delayed appeal. Petitioner argues that he is entitled to that relief because the lawyer who represented him during the underlying criminal proceedings failed to advise him of his right to appeal. We conclude that petitioner did not preserve that claim of error for our review. Accordingly, we affirm.

We state the facts consistent with the post-conviction court's findings and judgment, which the record supports. *Pereida-Alba v. Coursey*, 356 Or 654, 670-71, 342 P3d 70 (2015). Petitioner was indicted on multiple felony charges. In 2011, he signed a plea petition in which he pleaded guilty to two counts of second-degree robbery. Petitioner acknowledged in his plea petition that he would be sentenced, on each count, to "70 months prison, to serve every day," with the sentences on the two counts to run concurrently. Petitioner also acknowledged that the 70-month terms of incarceration would be imposed pursuant to ORS 137.700 (a provision adopted through Ballot Measure 11 (1994)), that he would be required to serve three years of post-prison supervision, and that the trial court could, in fact, impose a sentence up to the maximum allowed by law.

During petitioner's plea hearing, the trial court indicated that it would agree to be bound by the parties' plea negotiations. Accordingly, the court explained, it would sentence defendant to two 70-month terms of incarceration, to run concurrently, with no "credit for good time or good-behavior type events," so that petitioner would "serve every day of that 70 months." The court did, in fact, enter judgment in accordance with the plea agreement.

After explaining the details of petitioner's sentence to him at the plea hearing, the court told petitioner that he had "a right to appeal this judgment" by filing a notice of appeal within 30 days. The court also informed petitioner that appealing is "more complicated than that" and told

petitioner that, if he wished to appeal, he needed "to talk further with [his] lawyer."

Petitioner filed a *pro se* petition for post-conviction relief in late 2012 and, in early 2013, filed an amended petition through counsel. In his amended petition, petitioner alleged that he had received ineffective assistance of trial counsel, claiming that his trial lawyer's performance had been deficient in several ways. The amended petition incorporated some additional *pro se* claims, including the following:

> "Trial counsel failed to advise petitioner of his right to appeal, the timeline for filing an appeal, the scope of appeal relating to a guilty plea, and the appellate rights he was giving up by resolving his case via guilty plea. Moreover, trial counsel failed to confer at all with petitioner regarding his right to appeal. If trial counsel had properly conferred with petitioner and advised him regarding these matters, petitioner would have appealed his convictions."

The petition included many other *pro se* claims of inadequate assistance, including claimed failures to investigate and allegations that counsel failed to ensure that petitioner's guilty pleas were knowing, intelligent, and voluntary.

The amended petition closed with a prayer for a judgment:

> "1. Reversing [petitioner's] criminal convictions and sentences, and remanding the underlying criminal proceedings to the Lane County Circuit Court for a new trial, resentencing, or other further proceedings.
>
> "2. Such further relief as is just and equitable under the circumstances of this proceeding."

The amended petition did not include a request for a delayed appeal.

In his trial memorandum, petitioner emphasized only one of his inadequate-assistance claims, arguing that his trial lawyer had failed to make petitioner aware that, by pleading guilty, he would be incarcerated in an adult prison and would not serve any part of his sentence in the custody of the Oregon Youth Authority (OYA). Accordingly, petitioner concluded, his lawyer had failed to ensure that petitioner's

guilty pleas were knowing, intelligent, and voluntary.[1] In arguing that he was entitled to post-conviction relief, petitioner requested that the trial court reverse the criminal convictions and sentences and remand the criminal case for a new trial, resentencing, or other further proceedings. Again, except for making a generic request for "such relief as is just and equitable under the circumstances," petitioner did not assert that he was entitled to any form of relief that differed fundamentally from the requested reversal and remand. Specifically, petitioner did not request a delayed appeal.

In a declaration submitted in conjunction with his post-conviction trial, petitioner asserted that his trial attorney had "never discussed [his] right to appeal, the fact that [he] needed to appeal within 30 days from the date of conviction, or the scope of appeal in the event [he] plead[ed] guilty." Petitioner asserted that he had "no idea of the appeal right [he] was losing by pleading guilty."

The state's trial memorandum responded only to petitioner's claim that his trial lawyer had failed to ensure that his plea was knowing and voluntary. It did not separately respond to the claim that petitioner's lawyer had failed to advise him of his appeal rights.

At the post-conviction trial, petitioner again focused on his claim that he would not have pleaded guilty if he had not been advised that he could serve at least some of his time in OYA custody. Petitioner acknowledged that, if he prevailed in post-conviction, "he would go back and face all of those charges, and substantially—the potential of the substantial longer sentence." Petitioner reiterated that he would have "either gone to trial or tried to get a better deal" if he had understood that, under the plea agreement, he would serve his entire sentence in adult prison. After making those points, petitioner's counsel closed by stating, "[T]hat sums up I think Petitioner's case, and he asks for relief, and to go back to court when he can make a decision knowing all of the relevant facts." The parties did not discuss anything about whether petitioner had been advised of appeal rights or what the appropriate remedy would be if he had not.

---

[1] Petitioner did not otherwise challenge his understanding of the terms of the plea; he acknowledged that he had "received the stipulated 70-month sentence."

The post-conviction court made findings, and explained orally to petitioner what its written findings would be. The court began by addressing the allegedly missing advice about appeal rights:

> "*Whether or not the Petitioner was advised about an appeal there were no grounds to appeal this plea.* The plea was knowing and voluntary. There was a written petition, I've \* \* \* read the colloquy with the court. All the right questions were asked, all the right answers, and the Courts give great deference to that process."

(Emphasis added.) The court then went on to explain why it was rejecting the remainder of petitioner's claims of inadequate assistance of counsel.

Petitioner's post-conviction lawyer spoke before the trial ended, confirming that he would advise petitioner of his right to appeal the post-conviction court's judgment. At no point did either petitioner or his lawyer assert that the post-conviction court should have analyzed petitioner's claims related to the absence of appeal rights any differently than it had. That is, nobody argued to the post-conviction court that petitioner was entitled to relief in the form of a delayed appeal regardless of whether he could show that he had "grounds to appeal this plea."

The post-conviction court entered a judgment consistent with its oral ruling, making the following findings and conclusions:

> "A.   Whether or not [petitioner was] advised about appeal, there were no grounds to appeal this plea.
>
> "B.   Plea knowing - voluntary - written petition, colloquy with court.
>
> "\* \* \* \* \*
>
> "D.   Trial [attorney] told [petitioner] he may be able to go to OYA. Never told him he would. \* \* \*
>
> "E.   Court does not believe OYA was reason he pled. Not likely to win at trial. Highly likely he would have gotten [consecutive] sentences for two victims. \* \* \*
>
> "\* \* \* \* \*
>
> "G.   No inadequacy, no prejudice."

On appeal from the post-conviction judgment, petitioner acknowledges that, generally, "[u]nder Oregon law, a petitioner claiming inadequate assistance of counsel must prove that his or her trial counsel failed to exercise reasonable professional skill and judgment and that, because of that failure, the petitioner suffered prejudice." *Pereida-Alba,* 356 Or at 661-62. He also acknowledges that, to establish prejudice, a post-conviction petitioner generally must show that the inadequacy of his trial counsel "had a tendency to affect the result of the petitioner's prosecution." *Real v. Nooth,* 268 Or App 747, 752, 344 P3d 33, *rev den,* 357 Or 550 (2015). Thus, for example, petitioners who claim that their trial lawyers did not adequately advise them of the consequences of pleading guilty must "prove by a preponderance of the evidence that they would not have pleaded guilty had they received adequate assistance of counsel." *Cox v. Howton,* 268 Or App 840, 842, 343 P3d 677 (2015). Essentially, the petitioner must establish that the inadequate performance of counsel tended to affect the *outcome* of the criminal proceeding.

As petitioner points out, however, a somewhat different analysis applies when the alleged inadequacy of counsel is based on a lawyer's failure to protect his or her client's appeal rights, either by failing to advise the client of those rights or by failing to file a notice of appeal. In that situation, "the deprivation of appellate review is itself sufficient to satisfy the prejudice requirement." *Field v. Coursey,* 264 Or App 724, 728 n 3, 333 P3d 340, *rev den,* 356 Or 400 (2014). Put differently, a petitioner "does not need to identify a winning assignment of error"—*viz.,* a different outcome—to demonstrate prejudice under those circumstances. *Cavitt v. Coursey,* 255 Or App 47, 49, 298 P3d 558, *rev den,* 353 Or 533 (2013). A broader conception of prejudice applies, in that context, because the failure to file a notice of appeal denies a criminal defendant "access to the complete appellate process," the consequence of which could be that the defendant is not able even to obtain a transcript from which he or she could determine "what claims of error to urge." *Daniel v. Cupp,* 54 Or App 824, 827-28, 636 P2d 452 (1981), *rev den,* 293 Or 103 (1982). Accordingly, when a post-conviction petitioner establishes that his or her lawyer

inadequately failed to protect the petitioner's right to appeal, the petitioner generally is entitled to post-conviction relief in the form of a delayed appeal of the underlying criminal conviction—*without* having to establish any meritorious claim of error to raise in that appeal. *Id.* at 829; *see also Shipman v. Gladden*, 253 Or 192, 199, 204, 453 P2d 921 (1969) ("the Post-Conviction Hearing Act authorizes the granting of a delayed appeal when necessary to rectify a substantial denial of constitutional rights," which occurs when the failures of a defendant's criminal attorney cause "a deprivation of appellate review").[2]

In this case, petitioner argues, he is entitled to a delayed appeal in the underlying criminal case based on the principles discussed above. He notes that the post-conviction court did not reject his factual assertions that he had not been adequately advised of his appeal rights and that his lawyer had not filed a notice of appeal from the judgment of conviction. Rather, petitioner contends, the post-conviction court erroneously denied him relief on the ground that he had not established that he had a meritorious claim to raise on direct appeal:

> "In the present case, the post-conviction court erred when it denied relief on the basis that 'there were no grounds to appeal.' That legal conclusion is equivalent to a holding that an appeal would not have been meritorious. Accordingly, under *Shipman* and *Daniel*, the post-conviction court erred when it denied relief on that basis alone. For the same reason, petitioner was prejudiced under the Sixth and Fourteenth Amendments."

Petitioner asks us "to reverse the judgment of the post-conviction court and grant petitioner a delayed appeal."

In response, defendant superintendent first asserts that petitioner's argument is not preserved for appeal because

---

[2] The superintendent points out that, notwithstanding *Shipman*, we have held that, when a direct appeal "would have availed [a post-conviction petitioner] nothing," the petitioner could not prove that he had been prejudiced by his lawyer's failure to file a notice of appeal. *DeCosta v. Cupp*, 49 Or App 119, 121, 619 P2d 287 (1980). Thus, we held in *DeCosta* that the petitioner was not entitled to post-conviction relief, even though his lawyer had failed to file a timely notice of appeal, because the petitioner had identified a specific issue that he would have raised on appeal and "[s]uch a contention, had it been made on appeal, could not have been successful." *Id.*

he did not argue below, as he does on appeal, "that he was not required to prove that an appeal would 'likely have been meritorious' if he had appealed his criminal convictions." Alternatively, the superintendent argues that petitioner's claim fails on the merits because petitioner had pleaded guilty and stipulated to the resulting sentence. Accordingly, the superintendent contends, "there was no basis to appeal, and [petitioner] cannot have been prejudiced by trial counsel's alleged failure to discuss appeal rights with him."[3]

We conclude that petitioner's argument is not preserved for appeal, although we reach that conclusion for somewhat different reasons than those advocated by the superintendent. In our view, the lack of preservation is most apparent when we consider the single form of relief that petitioner requested from the post-conviction court: reversal and remand of the criminal conviction for a new trial or sentencing proceeding. At no point—not in his amended post-conviction petition, his trial memorandum, or at the post-conviction trial—did petitioner ask the post-conviction court to grant relief in the form of a delayed appeal. Moreover, even though petitioner alleged in a *pro se* claim that he "would have appealed" his conviction had he understood his appeal rights, his claim of prejudice shifted in his later declaration, in which he focused, instead, on his alleged lack of understanding of the appeal rights he was giving up *by pleading guilty*. Then, in both his post-conviction trial memorandum and at the post-conviction trial, petitioner asked only for a remand for a new trial or sentencing based on his counsel's alleged failure to ensure that his plea was knowing, intelligent, and voluntary. In doing so, petitioner explicitly acknowledged the possibility that he could end up receiving a greater sentence.

In sum, petitioner consistently requested post-conviction relief in the form of remand for a new trial or sentencing in the underlying criminal case. He never requested relief in the form of a delayed direct appeal of his criminal conviction. Perhaps unsurprisingly, given those circumstances, petitioner also never argued to the post-conviction court that he was entitled to a delayed appeal simply

---

[3] *See* 274 Or App at 386 n 2.

because his lawyer failed to advise him of his appeal rights, regardless of whether he could identify a possibly meritorious argument to pursue in such an appeal. Consequently, the claim that petitioner pursues in this court—that he had an absolute entitlement to a delayed appeal because his lawyer did not advise him of his appeal rights—is not preserved for our consideration. *See Field*, 264 Or App at 729 (preservation principles apply in the post-conviction context and we have an obligation to determine whether the appellant's arguments are adequately preserved for our review).

Affirmed.